IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. SLAYTON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant.　　　　　　　　／ | No. C 06-7045 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REMANDING FOR AWARD OF BENEFITS** |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion, DENIES defendant's motion, and REMANDS for an award of benefits.

**BACKGROUND**

On June 26, 2003, plaintiff Robert Slayton filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. Administrative Record ("AR") 57-59, 271-73. Plaintiff claimed a disability onset date of July 8, 2003[1] due to back pain and degenerative discs in his back, and depression. *Id.* at 65. Plaintiff has received continuous treatment for his back condition since January 2002, including physical therapy

---

[1] Although unclear from the record, it appears that the July 8, 2003 onset date was a typographical error. At the hearing, plaintiff amended the onset date to June 8, 2003. AR 303-04.

for chronic pain, chiropractic care, a transcutaneous nerve stimulator (TENS unit), and a number of medications. *Id*. at 143, 288. In March 2002, an MRI reading showed that plaintiff had three lumbar discs with abnormalities, including one disc (L4-5) that showed a "[t]ear in annulus near right neural foramen and posterior paracentral disc. Moderate disc protrusion with complete effacement of ventral epidural space and severe narrowing of right neural forament. The exiting nerve root is contacted by disc material." *Id*. at 165.

After the Social Security Administration ("SSA") denied the applications initially and on reconsideration, this matter was heard by an Administrative Law Judge ("ALJ") on September 12, 2005. *Id.* at 295-321. By decision dated May 16, 2006, the ALJ found that plaintiff was not disabled and denied his applications. *Id.* at 16-21.

In reaching this decision, the ALJ applied the five-step sequential evaluation procedure set forth in 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ found that plaintiff had not worked since June 8, 2003. *Id.* at 20. At the second step, the ALJ found that the medical evidence established degenerative disc disease of the lumbar spine, with disc herniation, and that those disorders were "severe" under Social Security regulations. *Id.* at 17. The ALJ also found that "the record indicates an adjustment disorder and upper extremity impairments that do not significantly interfere with the ability to perform basic work activities and are not considered to be severe, [but] they have been considered in assessing claimant's residual functional capacity . . . ." *Id*. At step three, the ALJ found that plaintiff's impairments did not, singly or in combination, meet or equal an impairment listed in Appendix 1 of Subpart P of Part 404 of the regulations for any twelve-month period. *Id*. The ALJ also found that plaintiff's subjective complaints about his impairments were not fully credible. *Id.* at 19-20. At step four, the ALJ found that plaintiff was able to perform his past relevant work as a music booking agent, based on a residual functional capacity ("RFC") for a limited range of sedentary work with certain limitations. *Id.* at 18-21.

The ALJ found,

> [C]laimant retains the ability to perform a limited range of sedentary work, specifically to occasionally lift up to ten pounds, frequently lift and/or carry lesser weights, stand and/or walk for two hours in an eight hour day and sit for six hours in an eight-hour day, with a sit/stand option at will. Claimant is further limited to occasional climbing, crawling, balancing, bending, stooping and kneeling.

2

*Id.* 17. In making this determination about plaintiff's RFC, the ALJ reviewed the medical reports of plaintiff's treating physician, Dr. Wagner, as well as of two consulting physicians, Dr. Lakshmanan and Dr. Dhesi. According to plaintiff's treating physician, Dr. Wagner, plaintiff is unable to work full time in any capacity, and "might be able to return to work at 4 hours/[day] up to 20/hrs/wk doing work that would allow him to change positions at will, that would allow him to take an hourly break of up to 10 minutes; that precluded bending, stooping, climbing, kneeling, and lifting greater than 10 pounds." *Id*. at 270. Dr. Lakshmanan reported that plaintiff should avoid heavy lifting, repetitive lumbar bending, and that plaintiff should change positions from sitting and standing frequently. *Id*. at 170. Dr. Lakshmanan did not provide an opinion regarding how many hours per day plaintiff could work, nor did he provide a specific lifting restriction (e.g., pounds). Dr. Dhesi stated that plaintiff suffered from degenerative disc disease, and opined that plaintiff could, *inter alia*, stand 4 to 6 hours in an 8 hour day with no more than 30-45 minutes at a time and that plaintiff should alternate standing with sitting; plaintiff could sit for 4 to 6 hours per day for no more than 45 minutes at a time; plaintiff could be expected to lift 25 pounds frequently and 40 pounds occasionally; and plaintiff should be precluded from frequent bending and stooping activities. *Id*. at 208.

The ALJ discounted the opinion of plaintiff's treating physician because Dr. Wagner had relied on plaintiff's statements of his symptoms in formulating his opinion. "I have also considered the opinion of [Dr. Wagner] who has long term knowledge of claimant's medical condition and symptoms. In assessing claimant's function[al] capacity, however, Dr. Wagner has relied primarily on claimant's subjective complaint, since his medical findings are not indicative of total disability."

The ALJ also relied on the testimony of a vocational expert, Robert Rashke, to find that plaintiff could still work as a booking agent or in other sedentary jobs.[2] In response to a hypothetical question from the ALJ, Mr. Rashke testified that a person with certain restrictions could perform plaintiff's previous job as a booking agent as well as other jobs in the national economy. *Id*. at 313-14. However,

---

[2] As plaintiff's counsel notes, since the ALJ found at step 4 that plaintiff could still perform his past work as a booking agent, there was no need for the ALJ to proceed to step 5 and evaluate whether plaintiff could perform any other job in the economy. However, the vocational expert's opinion that an individual with an hourly stretching limitation would be "virtually unemployable" is helpful to this Court because, for reasons explained *infra*, such testimony shows that there is no reason to remand for further factual findings.

3

in response to a hypothetical by plaintiff's attorney which included an additional limitation of needing to take hourly 5 to 10 minute breaks for stretching, Mr Rashke answered that such an individual would be "virtually unemployable" in any capacity. *Id*. at 316-17.

On September 8, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id.* at 5-8. Plaintiff then filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have moved for summary judgment.

**STANDARD OF REVIEW**

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

**DISCUSSION**

Plaintiff contends that the ALJ improperly discredited plaintiff's statements regarding his symptoms and pain, and that this error led the ALJ to erroneously discount the opinion of plaintiff's treating physician. Plaintiff also contends that the ALJ's determination of his RFC was flawed, and that the ALJ posed an incomplete hypothetical to the vocational expert at the administrative hearing. Defendant argues that the ALJ properly discounted plaintiff's subjective complaints and that the ALJ's findings are supported by substantial evidence.

4

### I. Analysis of plaintiff's subjective complaints

The ALJ found that "[t]here are medically documented disorders to account for the type of subjective complaints alleged. The alleged intensity, persistence and functionally limiting effects of the symptoms, however, are not found entirely credible, for the reasons discussed in the body of this decision." AR 21. In the body of the decision, the ALJ stated,

> I also considered all of claimant's subjective complaints. He estimated that, as a result of his medical disorders, he could sit for ten to fifteen minutes at a time and lift about five to ten pounds. Claimant also noted that his ability to walk was reduced. With respect to his daily activities, claimant reported that he customarily drinks coffee and takes his pain medications. He lies down for a while, operates his computer and uses his hot tub. In disability reports, claimant indicated he was unable to perform the tasks of his former job. He indicated, however, that he performed household chores, cooking, caring for his personal needs and doing laundry at a slower pace. He described frequent breaks between household chores. He described activities including regular feeding and walking his pets and preparing simple meals. He is able to drive, read and watch television. He remains in contact with others through the telephone and on e-mail. He attends clubs for music about once every one to two weeks. Claimant also noted that he is able to retain attention and concentration for ten to thirty minutes at a time (Exhibits 7E and 8E). Claimant also testified that he continues to perform self employment as a booking agent on a limited basis. In an August 2004 disability report, Richard Pollmann, claimant's friend, confirmed claimant's daily activities and essentially reiterated his subjective complaints (Exhibit 9E). I have considered this statement as essentially consistent with claimant's subjective allegations that do not preclude the functional capacity found herein, and have weighted it accordingly. The evidence as a whole fails to support the alleged intensity, persistence and functionally limiting effects of the subjective complaints, and the alleged severity of claimant's symptoms are not found entirely credible.

AR 19-20.

"Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ must consider the record as a whole and may not isolate a "specific quantum" of evidence to support his conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). The ALJ may properly consider the daily activities of a claimant when evaluating credibility if they provide contradictory evidence to his asserted limitations. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ

is "responsible for determining credibility and resolving conflicts in medical testimony [and] is likewise responsible for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's interpretation of plaintiff's testimony is reasonable and supported by substantial evidence, it is not the Court's role to second-guess it, even where a contrary finding might be reasonable. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

Here, because there was no evidence of malingering,[3] the ALJ was required to provide clear and convincing reasons for discrediting plaintiff's testimony. *See Lester*, 81 F.3d at 834. The ALJ did not do so, and indeed, although the ALJ recounted plaintiff's testimony in detail, he did not provide <u>any</u> specific reasons for finding plaintiff's testimony not entirely credible. Defendant asserts that the ALJ considered the affirmative findings of the record medical sources, the lack of supporting objective medical evidence, and plaintiff's activities in making his determination about plaintiff's credibility. However, defendant's assertions are purely speculative, as the ALJ does not make any explicit, specific findings discussing <u>how</u> either the medical evidence or plaintiff's activities are inconsistent with his subjective symptoms. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.").[4]

Accordingly, the Court finds that the ALJ's decision is not supported by substantial evidence. To the extent that the ALJ implied that he found plaintiff incredible on various grounds, it was improper

---

[3] The ALJ did not make a finding that plaintiff was malingering, and defendant does not contend that there was any such evidence.

[4] In addition, Social Security Ruling 96-7p states:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996), 1996 WL 374186, at *2.

to do so and does not withstand review. However, because defendant attempts to justify the ALJ's decision on these implied grounds, and because the Court finds that none of these grounds is tenable – and therefore remand for further factual findings is unnecessary – the Court discusses each below.

### A. Daily activities

"[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). However, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).

As an initial matter, the ALJ did not make any specific findings relating to plaintiff's daily activities. However, to the extent that the ALJ implied that plaintiff's subjective symptoms were inconsistent with his daily activities, the record does not support such a finding. The ALJ noted,

> With respect to his daily activities, claimant reported that he customarily drinks coffee and takes his pain medications. He lies down for a while, operates his computer and uses his hot tub. . . . he performed household chores, cooking, caring for his personal needs and doing the laundry at a slower pace. He described frequent breaks between household chores. He described activities including regular feeding and walking his pets and preparing simple meals. He is able to drive, read and watch television. He remains in contact with others through the telephone and on e-mail. He attends clubs for music about once every one to two weeks.

AR 19. Plaintiff also reported that it is painful to perform these activities, that he needs to "lay down and stretch out many times daily," and that he takes "quite a few pain meds each day so I do what I can and then I nap too." *Id*. at 99. Plaintiff reported difficulty in dressing (putting on his shoes and socks, bending over to put on pants), bathing (getting in and out of the shower), feeding himself ("can't lift much for groceries, or do much prep work, hard to stand to cook"), toileting ("hard to get up off stool"), and caring for his hair and shaving ("some days it's hard to get arms above head"). *Id*. at 100. Plaintiff

also reported that he can only drive, go to music shows, and stand for longer periods of time with the assistance of a cane, brace and electric stimulator, and that he has difficulty concentrating. *Id.* at 100-01, 105. In addition, when he goes to a club to watch live music, he is unable to "dance, sit or stand for any length of time." *Id.* at 103. There is nothing inconsistent about the activities listed by the ALJ and plaintiff's subjective reports of pain and disability. *See Gallant*, 753 F.3d at 1453 (ordering award of benefits for constant back and leg pain where claimant testified he cooked; could not sit over 10 minutes or stand over half an hour without back pain; could lift between 5 to 10 pounds; took several walks a day for about 20 to 25 minutes each, walking about a block or block and a half, resting and then returning home; and swam about 8 to 10 times a day averaging 5 minutes at a time). Further, none of plaintiff's reported daily activities involve skills that could be transferred to the workplace.

The ALJ's treatment of a disability report provided by plaintiff's friend, Richard Pollmann, is also questionable. The ALJ stated, "[i]n an August 2004 disability report, Richard Pollmann, claimant's friend, confirmed claimant's daily activities and essentially reiterated his subjective complaints." AR 20. The ALJ stated that he "considered this statement as essentially consistent with claimant's subjective allegations that do not preclude the functional capacity found herein, and have weighed it accordingly." *Id.* However, if the ALJ had fully credited Pollmann's report, as well as plaintiff's subjective statements, the ALJ could *not* have arrived at the RFC that he did. Mr. Pollmann stated that he had known plaintiff for 8 years and spent time with him several afternoons per month helping him with chores and eating dinner with him. *Id.* at 107. Mr. Pollmann stated, *inter alia*, that plaintiff "spends a lot of his time dealing with his pain and resting," "can barely do the minimal physical activities," has "very limited body movements, slow movements, has to double and triple read instructions and makes a lot of notes to remember things," and can walk 1 or 2 blocks before needing to rest for 10 to 15 minutes. *Id.* at 107-13. These statements are not consistent with the ALJ's determination that plaintiff has the RFC to "stand and/or walk for two hours in an eight-hour day and sit for six hours in an eight hour-day, with a sit/stand option at will," or that plaintiff can engage in "occasional climbing, crawling, balancing, bending, stooping and kneeling." *Id.* at 21.

**B.      Continued self-employment**

8

Defendant contends that the ALJ properly discounted plaintiff's testimony because plaintiff reported that he "continues to perform self employment as a booking agent on a limited basis." *Id*. at 20. Plaintiff testified that he works for about 1 hour at a time, approximately 1 or 2 times per month and that he is permitted to change positions at will. *Id*. at 300-01. Such limited employment is entirely consistent with plaintiff's statements of his symptoms and pain, and is not a clear and convincing reason for discrediting plaintiff's testimony.

### C. "Conservative" medical treatment

Defendant also argues that plaintiff's conservative medical treatment weighed against his subjective complaints. The ALJ stated that "the conservative and symptomatic medical attention provided by Dr. Wagner does not support a finding of a more diminished functional capacity than found herein." *Id*. at 18. However, as Dr. Wagner stated in his report,

> [Plaintiff's] back pain has been disabling, and much of the day is consumed with activities aimed at decreasing his pain. He does hourly stretches for 5-10 minutes; is forced to lie down for about 90 minutes to 2 hours/d; and uses his hot tub 4 x/d. He has been an active participant in his back care, and non-responsive to conservative care. He might be a surgical candidate, but there is no guarantee of success, and he does not wish to pursue surgery unless it is an emergent situation. Good studies do not demonstrate long term benefits of surgery over conservative care. . . .

*Id*. at 269. In addition, plaintiff testified that he had an uncle whose condition worsened after undergoing surgery. *Id*. at 310. The fact that plaintiff opted for conservative treatment under these circumstances is not a "clear and convincing" reason to discredit plaintiff's subjective complaints. The record shows that plaintiff has continuously sought treatment for his back condition, has undergone physical therapy, chiropractic care, and has taken a variety of pain medications. *Id*. at 18, 269; *see Gallant*, 753 F.2d at 1455 (holding ALJ erred in discrediting plaintiff's subjective testimony about back pain based on plaintiff's intermittent use of pain medication when plaintiff's doctor had recommended intermittent medication and record otherwise shows continuous treatment).

The cases cited by defendant are distinguishable in that the plaintiffs in those cases had unexplained gaps in their treatment or did not sufficiently seek non-surgical options to mitigate their symptoms. *See Burch*, 400 F.3d at 681 (plaintiff's pain testimony dismissed because she had not sought any treatment for three months); *see also Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (plaintiff

1  complained of pain but did not take any pain medication).

### D.     Medical evidence

Dr. Wagner has been plaintiff's treating physician continuously since 2002, and he provided comprehensive medical notes to support his diagnosis and his opinion that plaintiff cannot work full time. AR 133-67, 270. The ALJ Dr. Wagner's opinion because it was based in part on plaintiff's statements. Instead, the ALJ relied upon the opinions of two consulting physicians, Dr. Lakshmanan and Dr. Dhesi, to conclude that plaintiff is able to perform sedentary work that provides a sit/stand option. In addition to arguing that the ALJ properly discounted plaintiff's subjective testimony, defendant asserts that the ALJ properly relied on the opinions of the consulting physicians because they were inconsistent with Dr. Wagner's opinion.[5]

By rule, the SSA gives controlling weight to the opinion of a treating physician in disability determinations as it "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with substantial evidence in a claimant's file, then the opinion will be given controlling weight over the opinions of non-treating physicians. *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (discussing regulations regarding analysis of treating physician opinions).

A treating physician's opinion can only be dismissed for "clear and convincing" reasons that are supported by substantial evidence in the plaintiff's medical record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ cannot disregard the treating doctor's testimony unless he has a "specific and legitimate reason" that is supported by substantial evidence. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). Furthermore, if the non-treating physician's opinion differs only in the conclusion and not in the clinical findings, this discrepancy does

---

[5] Defendant also asserts that the ALJ's decision is supported by the opinion of two reviewing (but non-examining) physicians, Dr. Pong and Dr. Miller. However, the ALJ does not cite Dr. Pong's report, which was approved by Dr. Miller, AR 223-30, anywhere in his decision. Accordingly, the Court does not consider this contention.

10

not constitute substantial evidence to discredit the opinion of a treating physician. *Orn*, 495 F.3d at 632. However if the examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 632 (internal citations omitted).

For the reasons discussed *supra*, because the ALJ erroneously discredited plaintiff's subjective testimony, he also erred by discounting Dr. Wagner's opinions to the extent that those opinions were based on plaintiff's statements. In addition, the ALJ erred by not giving controlling weight to Dr. Wagner's opinion because he did not provide clear and convincing reasons for doing so that were supported by substantial evidence. In dismissing Dr. Wagner's opinion that the plaintiff is unable to perform sustained work activities for an 8 hour work period and was limited to performing work that allowed for a change of position at will and hourly breaks for 10 minutes, the ALJ stated:

> Hari Lakshmanan, M.D., a specialist in physical medicine, evaluated claimant and reported on August 27, 2003 that, as a result of the back disorder, claimant should avoid heavy lifting and repetitive lumbar bending. Dr. Lakshmanan further believed that frequent change of position was indicated. Rajpreet Dhesi, M.D., a specialist in physical medicine and rehabilitation, conducted a consultative examination and reported in May of 2004 that claimant was limited to standing and walking for thirty to forty five minutes at a time each for a total of six hours in an eight hour day, sitting for forty five minutes at a time for four to six hours in an eight-hour day and lifting up to forty pounds occasionally and twenty-five pounds frequently. Dr. Dhesi also indicated a sit/stand option and preclusion against frequent bending and stooping.

AR 18. Dr. Lakshmanan's determination that the plaintiff should required a frequent change of position, and Dr. Dhesi's opinion that plaintiff was unable to sit for more than 45 minutes at a time, was not inconsistent with the Dr. Wagner's opinion that plaintiff might be able to work at a job that "would allow him to change positions at will, that would allow him to take an hourly break of up to 10 minutes." *Id*. at 270. Each physician stated that plaintiff's condition precludes him from frequent bending, lifting, extended sitting or standing, and lifting heavy objects. *Id*. at 170, 208, 270. In addition, Dr. Lakshmanan reviewed plaintiff's condition and noted that his "[s]ymptoms at least partly appear consistent with a diskogenic process from the findings of the MRI report." *Id*. at 170.

11

Dr. Dhesi's assessment does differ from Dr. Wagner's in two aspects. Dr. Dhesi opined that plaintiff could be expected to lift 25 pounds frequently and 40 pounds occasionally; however, on that point the ALJ chose to give weight to Dr. Wagner's opinion that plaintiff cannot lift objects exceeding 10 pounds. *Id.* at 19. Dr. Dhesi also opined that plaintiff can sit and stand for 4 to 6 hours in an 8 hour day, for 30 to 45 minutes at a time. *Id.* at 208. In contrast, Dr. Wagner stated that plaintiff cannot work for 8 hours a day in any capacity.

Under *Orn*, if the differing conclusions between a treating and non-treating physician are not derived through independent clinical findings – such as differing diagnoses or use of an objective medical test that the treating physician did not consider – the treating physician's conclusion is given controlling weight. *Orn*, 495 F.3d at 632. Here, the objective medical evidence showed that plaintiff suffered from degenerative disc disease of the lumbar spine with disc herniation. Dr. Dhesi's conclusion that plaintiff can work an 8 hour day in a limited capacity was not based on a different diagnosis of plaintiff's back disorder. Nor did Dr. Dhesi's opinion derive from an objective clinical test that plaintiff's treating physician did not consider. Dr. Dhesi only conducted a general examination of the plaintiff's back, neck and shoulders, and did not rely upon a separate MRI or other medical tests. AR 206-09. Thus, Dr. Dhesi's different conclusion is not an independent finding that can be used to discredit the treating physician's opinion.

The ALJ also appeared to discredit Dr. Wagner's opinion when he noted that "[e]xcept for a diminished sensation in the left foot, there is no evidence of severe root irritation or focal neurological deficits to support Dr. Wagner's opinion that claimant is unable to perform sustained work activity for eight hours in a workday." *Id.* at 18. However, once plaintiff provided medical evidence supporting an impairment that is likely to cause his symptoms, the ALJ may not discredit plaintiff's subjective symptoms merely because of a lack of objective evidence fully supporting these symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). In this case, the ALJ found that plaintiff has a medically determinable physical impairment that is severe, and therefore a lack of objective medical evidence fully supporting the plaintiff's alleged symptoms is not substantial evidence to deny

the plaintiff's statements of his symptoms. Accordingly, the Court finds that the ALJ erred in failing to give adequate weight to Dr. Wagner's conclusions regarding plaintiff's functional capacity. *Orn*, 495 F.3d at 633; *Murray*, 722 F.2d at 501-02 (where findings of treating and consulting physicians were same but conclusions were different, ALJ improperly disregarded treating physician's opinion).

### E. Evaluation of depression

Plaintiff contends that the ALJ also erred by not evaluating whether plaintiff's depression affected his pain. Plaintiff repeatedly reported that he suffered from depression, *see*, *e.g.*, AR 65, 269, 306, and the consulting examining psychiatrist confirmed plaintiff's depression and found that plaintiff "certainly has symptoms of depression complicating his chronic back pain, but he is not disabled by the depression." *Id.* at 205. Social Security Ruling 96-7p instructs that when evaluating an individual's statements about pain or other symptoms, adjudicator should consider "[i]ndications of other impairments, such as potential mental impairments, that could account for the allegations." 1996 WL 374186, at *8. Although the ALJ considered plaintiff's depression in assessing his RFC, he did not appear to consider his depression in evaluating plaintiff's statements regarding his symptoms. This was error.

## II. Vocational expert

Plaintiff also contends that the ALJ improperly relied upon the testimony of a vocational expert in response to a hypothetical question that did not incorporate all of plaintiff's limitations. At the hearing, the ALJ asked the vocational expert the following question:

> [L]et me ask you to assume a hypothetical person with the following restrictions. For starters, an inability to perform any more than light work, with the need for a sit-stand option at will. And no more than occasional postural work including climbing, balancing, stooping, kneeling, crouching and crawling. And this individual would be . . . 47 to 50. . . . Would you be able to testify as to what impact those limitations would have on the prior work in this case?

AR 313. The vocational expert responded that a person with these limitations would not be precluded from performing plaintiff's previous job as a booking agent, and that even if the person was restricted to a sedentary exertional level, he would still be able to perform this work as generally performed in the

13

national economy. *Id.* In addition, the vocational expert stated that a person with the skill set of a booking agent, a sedentary RFC and an additional postural restriction with a sit-stand option would be able to perform other jobs, mostly office work, in the national economy. *Id.* at 314.

Plaintiff contends that the hypothetical posed to the vocational expert was incomplete and did not account for plaintiff's pain symptoms and need to take hourly breaks for stretching. Plaintiff notes that when his attorney posed a hypothetical that did incorporate plaintiff's need to take a 5 minute break every hour for stretching, the vocational expert replied: "I think the fact that it would become a working part of his day and it would be just seen as a problem, that I'd place it virtually unemployable as far as past work is concerned." *Id.* at 316. The vocational expert further testified that a person with the "break period requirement" would not be able to perform any work. *Id.* at 317.

When proposing a hypothetical, the ALJ "must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). If a hypothetical is incomplete, the opinion of the vocational expert "has no evidentiary value and cannot support the ALJ's decision." *Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir. 1988). Hypothetical questions posed to a vocational expert must include a claimant's subjective impairments unless the ALJ has clear and convincing reasons for discrediting the claimant's testimony. *See Gallant*, 753 F.2d at 1456; *see also Thomas*, 278 F.3d at 959.

Here, the Court finds that the ALJ's hypothetical was not complete because it did not "reflect each of the claimant's limitations." *Osenbrock,* 240 F.3d at 1164. Plaintiff's treating physician opined that plaintiff's condition requires him to take hourly stretches for 5 to 10 minutes and change positions at will. AR 18, 269-70. The opinions of Dr. Lakshmanan and Dr. Dhesi – upon which the ALJ relied in his determination of plaintiff's RFC – did not contradict Dr. Wagner on these points. Dr. Lakshmanan recommended that plaintiff change his position from sitting and standing frequently, *id.* at 170, and Dr. Dhesi found that plaintiff is "limited to standing and walking for thirty to forty minutes at a time" and to "sitting for forty five minutes at a time" for four to six hours in an eight hour day. *Id.* at 208. "Because claimant's allegations of persistent disabling pain are supported by the medical evidence in this case and the ALJ had no clear or convincing reasons for rejecting such claims,

14

claimant's pain should have formed a part of the ALJ's question to the expert." *Gallant*, 753 F.2d at 1456.

## III. Remedy

The remaining question is whether to remand for further administrative proceedings or simply for the payment of benefits. Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the Court must credit the opinion "as a matter of law." *Lester v. Chater*, 81 F.3d at 834. Similarly, where the ALJ improperly rejects a claimant's testimony regarding his own subjective pain and symptoms, and the claimant would be disabled if that testimony were credited, that testimony is credited as a matter of law. *Id.*; *Varney v. Secretary of Health and Human Serv.*, 859 F.2d 1396 (9th Cir. 1988).

Here, the medical evidence and plaintiff's testimony depict an individual who cannot sit, stand or walk for any length of time without severe pain, who must take hourly breaks to stretch, and who is required to alternate sitting and standing, and lie down frequently. The vocational expert testified that a person with an hourly stretching limitation was unemployable. In cases very similar to the instant one involving plaintiffs with chronic, severe back problems, the Ninth Circuit has noted that "[a] man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy." *Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir.1983); *see also Gallant*, 753 F.2d 1450 (remanding for award of benefits where medical evidence and the plaintiff's testimony showed, *inter alia*, that the plaintiff suffered from chronic low back pain and needed to alternate standing and sitting). On this record, the Court finds that there is no need to remand for further fact-finding. Accordingly, the Court REMANDS for an award of benefits.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment. (Docket Nos. 15 & 16). The Court REMANDS for the payment of benefits consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 27, 2008

SUSAN ILLSTON
United States District Judge